UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA K. FOX,

    Plaintiff,

vs.                                                                   Case No. 13-14800

ACTING COMMISSIONER OF SOCIAL SECURITY,      HON. AVERN COHN

    Defendant.

_____/

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

This is an action appealing the denial of an application for Supplemental Security Income (SSI) benefits. Plaintiff Patricia K. Fox (Plaintiff) appeals Defendant Acting Commissioner of Social Security's (Defendant) denial of her application for SSI benefits. Before the Court are the parties' cross-motions for summary judgment. (Doc. 13, 17). For the reasons below, there is substantial evidence supporting the decision of the administrative law judge. Plaintiff's Motion for Summary Judgment is therefore DENIED and Defendant's Motion for Summary Judgment is GRANTED.

**II. BACKGROUND**

**A. Procedural History**

Plaintiff filed an application for SSI benefits in October 2010, alleging several

disabling conditions. (Tr. at 94) The state agency denied Plaintiff's application at the initial stages of review and, at Plaintiff's request, a video hearing was convened before the Administrative Law Judge (ALJ) in January 2012. (Tr. at 94) After a postponement to allow Plaintiff to secure representation, a second video hearing was held before the ALJ in March 2012.

The ALJ determined that Plaintiff is not disabled, based on a finding that Plaintiff retained the residual functional capacity (RFC) to perform work at any exertional level, provided the character of the work met a number of requirements. This became the final decision of the Commissioner when the Appeals Council denied Plaintiff's Request for Review on October 9, 2013. (Tr. 1-3) This action followed.

### B. Evidence Presented to the ALJ

#### *1. Plaintiff's Testimony*

In Plaintiff's written statements and in her testimony before the ALJ, Plaintiff said that she cannot work because of several disabling conditions, including poor math and reading skills, severe mood swings, isolating behavior, racing and suicidal thoughts, and a limited ability to focus, follow directions, and handle stress. (Tr. at 99).

However, the record before the ALJ contained numerous examples of where Plaintiff, despite these deficits, has been able to perform a wide range of daily household tasks. Based on the testimony and written statements of Plaintiff and her mother, there was evidence that Plaintiff is able to use public transportation (Tr. at 27), perform most basic household chores (Tr. at 38, 232), cook macaroni and cheese (Tr. at 39, 232), take walks outside (Tr. at 40), use the internet (Tr. at 43), shop for toys, clothes, and jewelry (Tr. at 233), and, on a "typical day," prepare food for herself and

her son, shower, and get dressed (Tr. at 42).

### 2. Medical Assessments

In December 2010, state agency psychologist, George Starrett, Ed.D. reviewed the medical evidence and concluded that Plaintiff retained the RFC for a range of unskilled work. (See Tr. at 84-87) Dr. Starrett concluded that Plaintiff was "moderately limited" in her ability to understand and remember detailed instructions, the ability to maintain attention and concentration, and the ability to complete a normal workday/workweek without psychological-based interruptions or without an unreasonable number/length of rest periods. (Tr. at 86-87) However, Dr. Starrett also determined that Plaintiff was "not significantly limited" in her ability to understand, remember, and carry out simple instructions, or to perform activities within a schedule, sustain an ordinary routine without supervision, make simple work-related decisions, and work in coordination with or in proximity to others without being distracted by them.

In February 2012, Plaintiff's treating psychiatrist, Luven Tejero, M.D., completed a Medical Assessment of Plaintiff's mental ability to do work-related activities. The Assessment consisted of two portions: a check-box form relating to Plaintiff's ability to mentally perform work-related activities and a written narrative describing Plaintiff's condition in more detail.

The check-box portion contains three check-boxes alongside each relevant ability: "Not Significantly Limited," "Moderately Limited," and "Markedly Limited." "Markedly Limited" should be checked "when the evidence supports the conclusion that the individual cannot usefully perform or sustain the activity." "Moderately Limited" should be checked when that activity cannot be sustained for a portion of an eight-hour

work day.  (Tr. at 806)

In Dr. Tejero's check-box assessment, he indicated that the Plaintiff was "Markedly Limited" in the following activities:

- The ability to carry out detailed instructions
- The ability to maintain attention and concentration for extended periods
- The ability to work in coordination with or proximity to others without being distracted by them
- The ability to make simple work-related decisions
- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods
- The ability to interact appropriately with the general public
- The ability to accept instructions and respond appropriately to criticism from supervisors
- The ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes
- The ability to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness
- The ability to be aware of normal hazards and take appropriate precautions
- The ability to set realistic goals or make plans independently of others

In Dr. Tejero's narrative comments, he noted the following:

> [Plaintiff's] diagnoses of Major Depression, Recurrent, Severe; Attention-Deficit Disorder; Borderline Personality Disorder; and Borderline Intellectual Functioning affect her ability to carry out every day tasks at home and in the work place. [Plaintiff's] depressive symptoms affect her motivation level, resulting in poor hygiene and dressing inappropriately, and cant cause her to be imitable toward others.  She has difficulty focusing on one task and is easily distracted by others and/or other tasks. She has a history of impulsive decision making, leading to negative consequences. [Plaintiff] often needs prompts and reminders to compete every day tasks, such as putting on appropriate clothing or taking her medications regularly. [Plaintiff] needs assistance with goal-setting and requires constant reminders regarding her treatment and/or safety plan in order to keep her on path.

When compared side-by-side, Dr. Tejero's assessment, and his check responses in particular, indicate a higher degree of disability than Dr. Starrett's assessment.  It is this

difference in opinion, and the relative weight that the ALJ gave those opinions, that has become the focus of the current dispute.

### C. The ALJ's Findings

After discussing Plaintiff's medical impairments as well as her relevant medical, emotional, and academic history, the ALJ made the following observations:

> I find that [Plaintiff's] testimony regarding her inability to function three to four days a week is not credible because it is consistent with her testimony and [her mother's] testimony that [Plaintiff] is the primary caregiver for her young son.
>
> Turning to the opinion evidence of record, I gave great weight to [Dr. Tejero's narrative] because it was consistent with the longitudinal medical history. . . . However, I gave little weight to Dr. Tejero's checked responses on the first two pages of the submitted assessment because they are inconsistent with his narrative. By definition, a marked limitation means that the claimant cannot usefully perform or sustain an activity.
>
> I also gave great weight to [Dr. Starrett's narrative] because it is supported by clear rationale. . . .

(Tr. at 100-01) Based on these findings, the ALJ concluded that Plaintiff

> has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following nonexertional limitations. She is limited to simple, routine tasks and low stress work, which is defined as occasional decisionmaking and occasional changes in work setting. She cannot perform at production rate pace. [Plaintiff] should have no contact with the public and can have only occasional contact with supervisors and coworkers. She cannot perform tasks that require teamwork.

(Tr. at 98) This finding became the basis for the denial of Plaintiff's SSI benefits.

### III. ANALYSIS

### A. Standard of Review

Once the Appeals Council concludes there is no reason to alter the ALJ's decision and denies a claimant's request for review, the decision of the ALJ becomes

5

the final administrative decision of the Commissioner. 20 C.F.R. § 416.1484(b)(2). This Court reviews the Commissioner's final decision pursuant to 42 U.S.C. § 405(g). Judicial review under the statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."

*Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that the Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip*, 25 F.3d at 286 (internal citations omitted) Further, this Court does "resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

### B. Discussion

Plaintiff has advanced two primary objections. First, she says that the ALJ erred by failing to give controlling weight to her *treating* physician, Dr. Tejero, who offered an opinion supporting a finding of disability. As a second, related issue, Plaintiff claims that the ALJ erred by giving improper weight to the opinion of a *non-examining* physician, Dr. Starrett, whose opinion supported a finding that Plaintiff was not disabled. (Doc. 13, 6-12). Defendant, in its cross motion for summary judgment, argues that the ALJ appropriately discounted Dr. Tejero's opinion while giving controlling weight to that of Dr. Starrett.

### *1. Controlling Authority*

The Social Security Administration defines three types of medical sources: non-examining sources, non-treating (but examining) sources, and treating sources. *See* 20 C.F.R. § 404.1502; *see also Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). Under the "Treating-Source Rule," the opinions of a claimant's treating physician are generally given more weight than those of non-treating and non-examining

physicians because treating sources "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2). Further, if the opinion of a treating physician is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record," then an ALJ "will give it controlling weight." *Id.*; *see also Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

When an ALJ does not give the treating source's opinion controlling weight, the ALJ must consider a number of factors in considering how much weight is appropriate. *Rogers*, 486 F.3d at 242. These factors include the length of the treatment relationship with the physician, the nature and extent of that relationship, the frequency of examination, the supportability of the physician's opinion, the consistency of that opinion with the record as a whole, and the specialization of the physician. *Wilson*, 378 F.3d at 544. Further,

> [t]here is additional procedural requirement associated with the treating physician rule. Specifically, the ALJ must provide "good reasons" for discounting treating physicians' opinions, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."

*Rogers*, 486 F.3d at 242 (quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4). The purpose of this rule is two-fold: "'to let claimants understand the disposition of their

cases,'" and to "ensure[] that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

Normally, an ALJ's failure to follow this rule is an error which may constitute a lack of substantial evidence. *See Rogers*, 486 F.3d at 242-43 ("[C]ourts have remanded the Commissioner's decisions when they have failed to articulate 'good reasons' for not crediting the opinion of a treating source, as § 1527(d)(2) requires."). This error, however, is not always dispositive, and may be considered "harmless error" if: (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "where the Commissioner has met the goal of § 1527(d)(2) . . . even though she has not complied with the terms of the regulation." *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (quoting *Wilson*, 378 F.3d at 547). Nevertheless, the "ALJ's failure to follow the Agency's procedural rule does not qualify as harmless error where we cannot engage in 'meaningful review' of the ALJ's decision." *Blakley v. Comm'r Of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544).

### 2. The Weight Given to Dr. Tejero's Opinion

In her first claim of error, Plaintiff says that the ALJ failed to give appropriate weight to the opinion of a treating source physician, Dr. Tejero, whose opinion supported a finding of disability. (Doc. 13 at 6-10) Specifically, Plaintiff says that the ALJ erred when she concluded that Dr. Tejero's checked responses were entitled to little weight because they were "inconsistent with his narrative." (Tr. At 100.) Plaintiff,

9

to the contrary, says that the checked responses are consistent with the narrative, which "clearly indicate[] that she would have difficulty performing any substantial, gainful activity as a result of her depressive symptoms . . . ." (Doc. 13 at 8)

Here, the Court can engage in a meaningful review of the ALJ's decision regarding Dr. Tejero's checked responses. In her analysis, the ALJ described Plaintiff's extensive medical and psychological history, described through testimony by Plaintiff and her mother, diagnoses by other physicians, and records from educational and mental health institutions that treated Plaintiff. (Tr. 98-100) The ALJ concluded that Plaintiff's own statements "regarding her ability to function three to four days a week [are] not credible because [they are] inconsistent with her testimony and [her mother's] testimony that [Plaintiff] is the primary caregiver for her young son." (Tr. at 100) Turning to Dr. Tejero's evaluation, the ALJ explained that she gave great weight to his narrative "because it was consistent with [Plaintiff's] longitudinal history."

In her analysis, the ALJ noted Plaintiff's ability to bathe, feed, read to, and play with her son; her ability to wash dishes, do laundry, prepare simple meals, dust, and clean her and her son's room; her ability to shop for groceries when accompanied by others; and her ability to use public transportation regularly. (Tr. at 99) The ALJ had sufficient basis to conclude that Dr. Tejero's narrative is consistent with Plaintiff's history, *see* Part II.B. *supra*, because it accurately describes Plaintiff's psychological condition short of finding that she is completely disabled.

However, the ALJ explained that Dr. Tejero's checked responses indicating that Plaintiff is "markedly limited" were inconsistent with his narrative, as well as with Plaintiff's longitudinal history. The indication that Plaintiff is "markedly limited"—rather

10

than "moderately limited"—means that Plaintiff is unable to perform or sustain the activity for even a portion of an 8-hour work day. *See* Part II.B. *supra*. Given Plaintiff's own testimony describing her ability to perform tasks both at home and outside the home, Dr. Tejero's conclusion that Plaintiff is "markedly limited" appears plainly inconsistent with other evidence presented to the ALJ.

Plaintiff further says that it was improper for the ALJ to "bifurcate" Dr. Tejero's opinion by crediting his narrative while at the same time discounting his checked responses. However, Plaintiff presents no case law indicating that such a "bifurcated acceptance" is improper, and instead argues that it simply "does not make sense." (Doc. 13 at 7). The Court finds no reason why the ALJ should be prohibited from giving controlling weight to one portion of a treating physician's opinion while discounting another, so long as the ALJ articulates "good reasons" for its decision to do so.

On balance, the ALJ provided good reason for not giving Dr. Tejero checked responses controlling weight: the fact that it was inconsistent with the record as a whole. Although the ALJ's explanation on this point was perhaps too succinct, when read in the context of the opinion and of Plaintiff's longitudinal history, there is good reason to discount Dr. Tejero's checked responses.

Finally, even if the ALJ's decision failed to provide "good reason" for discounting Dr. Tejero's checked responses, such a failure would be harmless error. Here, the sum and substance of the ALJ's decision has met the goal of § 1527(d)(2)—the "provision of the procedural guard of reason"—and the Court was able to engage in meaningful review. *Wilson*, 378 F.3d at 547. Thus, any error in this regard was harmless.

### *3. The Weight Given to Dr. Starrett's Opinion*

As separate but related objection, Plaintiff says that the ALJ erred when she gave controlling weight to the opinion of Dr. Starrett, a non-examining physician. Specifically, Plaintiff argues that Dr. Starrett's opinion should be entitled to little weight because his opinion was contrary to the opinion of Dr. Tejero, a treating physician. However, Plaintiff's claims in this regard cannot succeed.

In general, the opinion of a non-examining medical advisor is entitled to less weight than a physician who examines the claimant. *Ealy*, 594 F.3d at 514 ("The Social Security Administration gives the most weight to opinions from a claimant's treating source . . ."). By extension, Plaintiff argues that as a rule, "the opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physician." *Shelman v. Heckler*, 821 F.2d 316, 319 (6th Cir. 1987) (quoting *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir.1985)). .

However, there is no support for this contention*,* and *Shelman* and *Broughton* are distinguishable. In these cases, the ALJ gave controlling weight to a non-examining opinion but failed to provide good reason for discounting the opinions of treating physicians. *Shelman*, 821 F.2d at 321 ("[T]he ALJ made no finding that the opinions of plaintiff's treating physicians were not supported by sufficient medical data."); *Broughton*, 776 F.2d at 962 ("The decision of the ALJ provides no clue as to why he discounted the opinion of . . . the treating physician."). Here, by contrast, the ALJ provided good reason for discounting Dr. Tejero's checked responses, and her decision provided grounds for meaningful review. The Plaintiff provides no support for the argument that a non-examining opinion must always be given little weight, when contrary to a *properly discounted* opinion of a treating physician.

Finally, Plaintiff argues that the ALJ erred in giving Dr. Starrett's opinion controlling weight because Dr. Starrett's December 2010 review "did not have the benefit" of more than 600 pages of treatment notes, which were later presented to the ALJ.  However, the ALJ specifically discussed the relevant portions of these hospital records when considering Plaintiff's extensive medical and psychological history.  (Tr. at 99-100).  With this in mind, the ALJ nonetheless determined that Dr. Starrett's opinion should be given great weight.  (Tr. at 100)

For these reasons, the ALJ had sufficient basis to credit Dr. Starrett's assessment, and her decision regarding Plaintiff's residual functional capacity is supported by substantial evidence.

IV.

For the above reasons, Plaintiff's Motion for Summary Judgment has been denied, and Defendant's Motion for Summary Judgment has been granted.

SO ORDERED.

 S/Avern Cohn
UNITED STATES DISTRICT JUDGE

Dated:  September 30, 2014

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, September 30, 2014, by electronic and/or ordinary mail.

S/Sakne Chami
Case Manager, (313) 234-5160